

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1061 | **DATE** | February 6, 2003 |
| **CASE TITLE** | *Karen Randall vs. Unitech Systems, Inc.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court: (1) denies defendant's motions *in limine* [8-1] and (2) grants defendant's motion for summary judgment [4-1]. Judgment is entered in favor of defendant Unitech Systems, Inc. and against plaintiff Karen Randall.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 07 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 18 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT 03 FEB -6 PM 4:46 | | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KAREN RANDALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 02 C 1061 |
| | ) | |
| UNITECH SYSTEMS, INC., | ) | Judge James H. Alesia |
| | ) | |
| Defendant. | ) | |
| | ) | |

DOCKETED
FEB 0 7 2003

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) defendant's motions *in limine* and (2) defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court: (1) denies defendant's motions *in limine* and (2) grants defendant's motion for summary judgment on all counts.

## I. BACKGROUND[1]

Plaintiff Karen Randall ("Randall") brought this suit against defendant Unitech Systems, Inc. ("Unitech") alleging race and sex discrimination. Specifically, Randall claims Unitech discriminated against her because of her race and sex when Unitech terminated her employment.

Unitech is an information integrity software business comprised of six groups, which, in turn, are divided into self-managed teams. A group leader supervises one or more teams and collaborates with other group leaders. Some groups also have unit leaders, which are team

---

[1] Unless otherwise indicated, the following facts – taken from the parties' Local Rule 56.1 statements – are undisputed.



members as well as members of the leadership group. Ultimately, unit leaders are supervised by the group leader.

On December 18, 2000, Randall, an African-American female, began her employment as a Market Unit Leader in Unitech's Market Development Group. Randall was a member of the leadership group and a member of the Solutions Management team within the Market Development Group. Her duties as Market Unit Leader included: (1) generating significant revenue and profits from Unitech's Information Integrity solutions; (2) actively collaborating with other leadership group members in the growth and profitability of Unitech; and (3) Solutions Management. Randall's job responsibilities also included writing and making presentations. As part of her orientation Randall completed a ninety-day training program which was designed to orient Randall to the company and assist her with her job duties and projects.[2]

Randall initially interviewed for the position of Group Leader of the Market Development Group. However, Unitech's President and Company Leader, Madhavan Nayar ("Nayar"), made the decision to hire Randall as Market Unit Leader based upon her qualifications. Nayar acted as the Group Leader of Market Development while the position remained vacant and supervised Randall and the other members of the Market Development Group.

---

[2] Unitech cites dissatisfaction with Randall's presentation at the conclusion of her training. Randall moves to strike these statements on the basis of relevance and vagueness. Randall argues Nayar, who made the decision to terminate Randall, did not mention the training presentation as part of his reasons for dissatisfaction. In granting defendant's motion for summary judgment, the court did not consider this evidence. Therefore, the court denies as moot plaintiff's motion to strike.

Problems arose between Randall and some of the other Unitech employees. There were complaints that Randall was attempting to act as a supervisor to Mary Miller ("Miller") and Rakhi Advani ("Advani") when Randall did not have supervisory authority. Group Leader for Team Development Tim Augustine ("Augustine") felt that Randall was condescending to Advani and another employee. Randall complained to Nayar and Augustine that Miller and Advani were not completing their work. Randall claims that Nayar and Augustine did not support her in dealing with Miller and Advani. Additionally, Randall complains that the leadership team resisted providing her with requested information. Randall also states David P. Smith, referred to her as "you people," and Mahmood Qadri, while emphasizing his Mideast descent, told her "but you, you know, you came from Africa."[3]

Nayar made the decision to terminate Randall's employment. Nayar's reasons for firing Randall included: her lack of writing skills, her lack of knowledge of the software marketing industry, and her poor attitude. On April 17, 2001, Randall met with Augustine and Human Resources Consultant Kathy Chang and was informed of Unitech's decision to terminate her employment. At that meeting, Augustine told Randall there was not a good fit between the position expectations and her skill set.

In September of 2001, Unitech hired Andrew Parker ("Parker"), a Caucasian male, as the Group Leader of Market Development. Parker had authority over his team members, including Advani. Parker raised concerns with Advani's performance and steps were taken to inform

---

[3]Unitech raises an objection that these statements are irrelevant. As discussed *infra* Sect. II.C.3, even if the court considered this evidence, the court would still grant defendant's motion for summary judgment. Thus, the objection is moot.

3

Advani of the need to improve. Specifically, Parker complained of Advani's inability to take direction, lack of people skills, and lack of product knowledge. Parker sought Advani's termination and Nayar discussed alternatives to firing Advani with Parker. Advani later resigned from the company.[4]

On June 21, 2001, Randall filed a charge with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that Unitech discriminated against her based on her race and sex in regard to her dismissal. On January 18, 2002, in response to Randall's request to withdraw the charge, the IDHR ordered the case closed. On January 31, 2002, the EEOC issued a right to sue letter. On February 13, 2002, Randall filed the current complaint against Unitech. Count I alleges discrimination based on race in violation of Title VII of the Civil Rights Act of 1964. Count II alleges discrimination based on race in violation of 42 U.S.C. § 1981 ("§ 1981"). Count III alleges discrimination based on sex in violation of Title VII. This court has subject-matter jurisdiction over Randall's claims pursuant to 28 U.S.C. § 1331, as all counts arise under federal law. This matter is currently before the court on Unitech's motion for summary judgment on all counts.

## II. DISCUSSION

As a threshold matter, the court will dispose of Unitech's motions *in limine* to establish what evidence is admissible and, therefore, properly before this court in support of Unitech's summary judgment motion.

---

[4]Unitech objects to the facts relating to Parker and Advani as irrelevant. This same argument is addressed in the discussion of Unitech's motions *in limine, infra* Sect. II.A.

4

A.  **Motions *in limine***

Unitech seeks to exclude evidence of the following: (1) Advani's employment at Unitech after Randall's termination; (2) the working relationship between Advani and Parker; (3) any and all severance agreements entered into by former Unitech employees; (4) the written warning issued to James Beebe and his subsequent resignation from Unitech; (5) Unitech's Strategic Plan; (6) the fact that Unitech did not issue Randall a written warning before her termination; (7) the fact that Unitech did not place or consider placing Randall in a different position before terminating her; and (8) the fact that Unitech did not make arrangements for Randall to resign rather than terminating her.

With regard to Unitech's motions *in limine* numbered 1, 2, 3, 4, 6, 7, and 8, the court finds that – for reasons further explained *infra* Sect. II.C.1.b – even if the court considered this evidence, the court would still grant defendant's motion for summary judgment. Therefore, the court denies as moot Unitech's motions *in limine* numbered 1, 2, 3, 4, 6, 7, and 8.

With regard to Unitech's fifth motion *in limine*, Randall makes no reference to Unitech's strategic plan in her response nor has any such document been submitted to the court. Thus, the court denies Unitech's fifth motion *in limine* to exclude the strategic plan.

B.  **Summary judgment standard**

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists for trial when, in viewing

5

the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 477 U.S. at 256. Once the moving party presents a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256-57; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Unitech argues that it is entitled to summary judgment on all of Randall's claims.

C.   **Race and sex discrimination claims under Title VII**

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination may be established in either of two ways – through

direct evidence of discriminatory motive or intent or through the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002). Here, Randall does not argue that there is any direct evidence of discrimination and relies upon the *McDonnell Douglas* approach. Thus, the court will examine Randall's case under the burden-shifting approach of *McDonnell Douglas*. *See Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002) (analyzing race and sex discrimination claims together under Title VII).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of employment discrimination. *Gordon v. United Airlines*, 246 F.3d 878, 885 (7th Cir. 2001). If the plaintiff establishes a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a legitimate, nondiscriminatory reason for discharging the plaintiff. *Id.* at 886. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the adverse action was a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). Unitech argues that it is entitled to summary judgment because Randall cannot establish a prima facie case, and even if she could, she cannot prove that Unitech's reasons for terminating her employment were pretextual.

1.  **Prima facie case**

A plaintiff establishes a prima facie case of discrimination by demonstrating that: (1) she belongs to a protected class; (2) she performed her job according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside the protected class were treated more favorably by the defendant. *Id.* at 885-

7

86. The parties do not contest that Randall – an African-American female – belongs to a protected class. Nor do the parties dispute that Randall suffered an adverse employment action when she was fired. However, Unitech contends that Randall has failed to establish elements two and four of her prima facie case.

### a. Unitech's legitimate expectations

Randall argues that the legitimate expectations prong of the prima facie case is not necessary to the analysis where, as is argued here, an employer applied its legitimate expectations in a disparate manner. The Seventh Circuit has stated that when an employee concedes she failed to meet her employer's expectations but claims that she was disciplined more severely than other rule-breakers, it "makes little sense" to evaluate whether she was meeting her employer's legitimate expectations. *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001) (discussing *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999)). Rather, where the plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate employment expectations in a disparate manner, the second and fourth prongs of a prima facie case merge, allowing the plaintiff to establish a prima facie case by demonstrating that similarly-situated employees were treated more favorably. *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002). Thus, the court will proceed to evaluate Randall's evidence of similarly-situated employees.

### b. Similarly-situated employees

To show disparate treatment of similarly-situated employees, Randall cites to the treatment of Advani and Parker, as well as the company's failure to follow its disciplinary

policies for Randall, when it did so for other employees. Unitech argues in response that none of these employees were similarly-situated to Randall.

This element of the prima facie case requires Randall to show that she was treated less favorably than similarly-situated employees not in her protected class. *Curry*, 270 F.3d at 478. For the plaintiff to demonstrate that another employee is similarly-situated, she must show that there is someone who is directly comparable to her in all material respects. *Grayson*, 308 F.3d at 819. In making this determination, "a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). In a disciplinary case – where the plaintiff claims her employer disciplined her more harshly than a "similarly-situated employee based on some prohibited reason – a plaintiff must show that [she] is similarly-situated with respect to performance, qualifications, and conduct." *Id.* This usually entails establishing that the "two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18. At issue is whether Unitech treated differently other male or non-African-American unit leaders who had similar performance problems to Randall.

Initially, Randall argues she was similarly-situated to Advani, a female of Indian national origin, because they had similar performance problems. Randall asserts she and Advani were similarly-situated equals, "despite Plaintiff's nominal higher title." However, Randall states she and Parker both acted as supervisors to Advani. Despite Randall's contradictory arguments, Randall and Advani held different positions with different responsibilities. It is undisputed that

Advani was employed as a Product Marketing Specialist, whereas, Randall was hired as Market Unit Leader. As Market Unit Leader, Randall was a member of the leadership group and, therefore, was expected to perform the duties associated with that group. Randall has offered no evidence that Advani was part of the leadership group or that Advani's position entailed similar responsibilities. Therefore, Randall and Advani were not similarly-situated employees. *See Patterson v. Avery*, 281 F.3d 676, 680 (7th Cir. 2002) (finding plaintiff was not similarly-situated to employee who had different job responsibilities). In addition, Advani and Randall experienced their performance problems while being supervised by different supervisors. Although both Advani and Randall were initially supervised by Nayar, Advani was supervised by Parker when she experienced performance problems and resigned.[5] Thus, the respective problems of Advani and Randall were addressed by two different supervisors. Therefore, Randall and Advani were not similarly-situated. *See Radue*, 219 F.3d at 618 (finding employees under different supervisors were not similarly-situated because supervisors may exercise their discretion differently). Thus, the court finds that Advani and Randall were not similarly-situated because they had different positions and different supervisors.

Next, Randall argues that she and Parker, a white male, were similarly-situated because they applied for the same position and each served as the highest-ranking employee within the

---

[5]In plaintiff's memorandum, Randall claims that both she and Advani were supervised by David M. Smith. Unitech disputes this and plaintiff provides no supporting citation to the record. Thus, the court rejects plaintiff's unsupported assertion. *See Mary A. ex rel. Hadac v. Harrison*, No. 99 C 2907, 2001 WL 503034, at *6 (N.D. Ill. May 11, 2001) (stating unsupported assertions of fact are insufficient to defeat summary judgment) (citing *Ilbardt v. Sara Lee Corp.*, 118 F.3d 1151, 1152 n.1 (7th Cir. 1997)).

Market Development Group. Randall complains that Parker had a larger salary and had authority over Advani and Miller. These differences in salary and authority demonstrate Parker was not hired to fill Randall's position, but to fill the higher-ranking, Group Leader position. Thus, Randall and Parker held different positions with different responsibilities as Randall was Market Unit Leader and Parker was Group Leader of Market Development. Therefore, Randall and Parker were not similarly-situated employees. *See Patterson*, 281 F.3d at 680 (finding plaintiff was not similarly-situated to employee who had different job responsibilities). Further, Randall has failed to prove that she and Parker engaged in similar conduct. There is no evidence Parker had similar performance problems to Randall with regard to poor attitude, writing skills, and software marketing knowledge. *See Radue*, 219 F.3d at 619 (finding plaintiff failed to show employees were similarly-situated where there were material differences in conduct). Thus, the court finds that because Parker and Randall had different positions and did not engage in similar conduct, they were not similarly-situated.

Finally, Randall argues she was treated differently from other employees because she was denied the benefit of Unitech's disciplinary policies. However, the mere fact that employees may have been covered by the same discipline policy does not make them similarly-situated for Title VII purposes. *Hull v. APCOA/Standard Parking Corp.*, No. 99 C 2832, 2000 WL 198881, at *13 (N.D. Ill. Feb. 14, 2000). Further, none of these employees were similarly-situated to Randall. First, Randall points out that she was not issued a written warning, whereas, James Beebe ("Beebe"), a white male, received a written warning for a sexual harassment complaint. However, Beebe was not similarly-situated to Randall as they did not engage in similar

11

misconduct. A sexual harassment allegation is unrelated to allegations of poor writing skills, lack of software marketing knowledge, and poor attitude. *See Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002) (finding employee facing sexual harassment allegations was not similarly-situated to employees terminated for mismanagement). Second, Randall contrasts her situation to those of the white males supervised by David M. Smith who were placed on probation. Randall has not provided any information on the positions these employees held or the behavior for which they were placed on probation. Thus, Randall has failed to meet her burden of demonstrating these employees were similarly-situated. *Radue*, 219 F.3d at 617 (stating plaintiff must show that she is similarly-situated with respect to performance, qualifications, and conduct). Third, Randall argues she was treated differently from Kevin Eng and Thomas Kopp, non-African-American males who were permitted to resign by mutual agreement with severance packages. Again, Randall provides no information as to the positions Kevin Eng and Thomas Kopp held – other than referring to them as "leadership group" employees – or the reasons for their resignations. Thus, Randall has failed to prove she was similarly-situated to these employees. The court concludes that Randall has failed to establish that any Unitech employees were similarly-situated to her.

Therefore, the court finds that Randall has failed to establish a prima facie case of discrimination under Title VII. Thus, the court grants defendant's motion for summary judgment as to plaintiff's race and sex discrimination claims under Title VII.

## 2. Legitimate nondiscriminatory reasons

Even if Randall could establish her prima facie case, Unitech offers a nondiscriminatory reason for Randall's termination: Unitech was dissatisfied with Randall's performance. Specifically, Randall was terminated because of her failure to demonstrate satisfactory writing abilities, poor attitude, and lack of knowledge of the software marketing industry. The undisputed evidence provides clear factual support for Unitech's asserted legitimate nondiscriminatory reasons. The Seventh Circuit has repeatedly emphasized "courts do not sit as super personnel departments to second guess an employer's facially legitimate business decisions." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir. 2002). Thus, the court finds that Unitech has articulated a legitimate, nondiscriminatory reason for terminating Randall's employment.

## 3. Pretext

Because Unitech has established a legitimate, nondiscriminatory reason for its decision, Randall must show that the proffered reason is pretextual. Randall argues that defendant's stated reasons were pretext because: (1) Unitech treated Randall in a materially different fashion from similarly-situated employees; (2) Unitech's white male leadership group refused to treat Randall as an equal; (3) Unitech employees made discriminatory comments; and (4) Unitech failed to follow its own disciplinary policies and procedures.

"'A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks.'" *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002) (quoting *Grube v. Lau Indus., Inc.*, 257

F.3d 723, 730 (7th Cir. 2001)). To show pretext, Randall bears the burden of demonstrating that Unitech's stated reasons for its decision are dishonest, rather than merely in error. *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002). To meet this burden, Randall may provide "'evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" *Gordon v. United Airlines*, 246 F.3d 878, 888-89 (7th Cir. 2001) (quoting *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998)). Randall must squarely rebut the articulated reasons for her discharge. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997). Thus, Randall's burden is to show that Unitech lied when it stated that it believed Randall had poor writing skills, lacked knowledge of the software marketing industry, and had a poor attitude.[6]

First, in order to demonstrate Unitech's stated reasons did not actually motivate her discharge, Randall argues that Unitech treated her in a materially different fashion from similarly-situated employees. The court rejects this argument because, as discussed previously, *supra* Sect. II.C.1.b, Randall failed to provide evidence of similarly-situated employees.

Second, Randall contends the real reason for her termination was that Unitech's white male leadership group refused to treat her as an equal. In support of her argument, Randall cites the leadership's resistance to share information necessary to complete her work. The only

---

[6]Unitech argues that an inference of nondiscrimination arises from the fact that the same person, Nayar, hired and fired Randall. The Seventh Circuit has stated that it "emphatically rejected the 'same-actor inference'" in *Johnson v. Zema*, 170 F.3d 734, 745 (7th Cir. 1999). *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 361 (7th Cir. 2001).

14

specific information Randall refers to is David P. Smith's anticipated timeline for product development. However, the reasons for Randall's termination – unsatisfactory writing skills, poor attitude, and lack of knowledge of the software marketing industry – are entirely distinct from inability to complete her work due to lack of information about product development. Therefore, Randall has failed to demonstrate pretext on this basis.

Third, Randall also refers to comments made by David P. Smith, referring to plaintiff as "you people," and Mahmood Qadri, telling plaintiff "but you, you know, you came from Africa" while emphasizing his Mideast descent. However, these remarks are insufficient to establish discriminatory intent because they were not made by Nayar, who made the decision to fire Randall. *See Jones v. Union-Pac. R.R. Co.*, 302 F.3d 735, 743 n.6 (7th Cir. 2002) (stating that a plaintiff cannot prove discrimination with statements by nondecision makers). Also, Randall failed to show any causal connection between the remarks and the decision to terminate her. *See Barakat v. Taco Bell, Inc.*, 970 F. Supp. 634, 641 (N.D. Ill. 1997) (stating that a "[p]laintiff must establish a causal connection between the remarks and the decision") (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989)). Therefore, these comments are insufficient evidence to show pretext.

Fourth, Randall cites to Unitech's failure to follow its own disciplinary policies and procedures to demonstrate that Unitech's reasons for firing her were pretextual. Unitech argues that it has no established discipline procedure, and explains that each situation is dealt with

individually.[7] Unitech reasons that because Randall did not possess the abilities and expertise necessary to perform her job duties, termination was the appropriate course of action. Even if a discipline procedure is in place, "the fact that an employer did not follow a progressive discipline program, without some doubt raised as to his genuineness for not doing so, fails to demonstrate pretext." *Barakat*, 970 F. Supp. at 640 (citing *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992)). Because Randall offers no other evidence of pretext, she has failed to offer evidence to call into doubt the genuineness of Unitech's decision to terminate her rather than utilize other disciplinary methods. Thus, any failure by Unitech to follow its disciplinary policies with respect to Randall is insufficient to demonstrate pretext. Therefore, the court finds that Randall has failed to establish that Unitech's proffered reasons are mere pretext. Accordingly, the court grants Unitech's motion for summary judgment.

In sum, Randall has failed to establish elements two and four of her prima facie case and has failed to show that Unitech's proffered reasons were pretextual. Therefore, the court grants Unitech's motion for summary judgment as to plaintiff's race and sex discrimination claims under Title VII.

**D.     Race discrimination claim under § 1981**

Section 1981 proscribes discrimination based on race and ethnicity in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).

---

[7]Unitech submitted a copy of Unitech's "team member discipline process" to the IDHR. This policy has never been published by the company and was not followed with respect to Randall.

16

Discrimination claims pursuant to Title VII and § 1981 are analyzed in the same manner. *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002). As discussed previously, *supra* Sect. II.C.1 & 3, Randall has failed to establish a prima facie case of race discrimination under Title VII and that Unitech's proffered reasons were pretextual. Therefore, the court finds Randall's § 1981 race discrimination claim equally unsuccessful. Thus, the court grants defendant's motion for summary judgment as to plaintiff's race discrimination claim under § 1981.

Therefore, the court finds that there is no genuine issue of material fact and Unitech is entitled to judgment as a matter of law on all counts. Accordingly, the court grants Unitech's motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, the court (1) denies Unitech's motions *in limine* and (2) grants Unitech's motion for summary judgment on all counts. Final judgment in this case is entered in favor of defendant Unitech Systems, Inc. and against plaintiff Karen Randall.

Date: FEB 06 2003

James H. Alesia
United States District Judge